UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

M. R.,

              Plaintiff,

    v.

SSA COMMISSIONER,

              Defendant.

Case No. 25-cv-04832-EMC

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Docket No. 11

Plaintiff M.R. seeks review of the Social Security Administration's final decision denying his applications for disability insurance benefits and supplemental security income.  As M.R. has exhausted his administrative remedies, the Court has jurisdiction under 42 U.S.C. § 405(g).  M.R. seeks an order reversing the agency decision and remanding for payment of benefits, or in the alternative, remand for further administrative proceedings.  The Social Security Commissioner opposes the motion and cross-moves for summary judgment.

For the reasons stated below, M.R.'s motion to reverse the ALJ's decision and remand for payment of benefits is **GRANTED**.

I.      **FACTS & BACKGROUND**

M.R. is in his late thirties.  In 2021, after experiencing multiple deaths of close family members, he attempted to commit suicide.  Afterward, he was diagnosed with depression and psychosis.  On February 28, 2022, M.R. filed both a Title II application for disability benefits and a Title XVI application for supplemental security income.  AR 10.  M.R. alleges physical and mental disability due to back problems, anxiety, paranoia, isolation, and auditory hallucinations.  He has not engaged in substantial gainful activity since January 23, 2021.  AR 13.

M.R.'s claims were initially denied on August 10, 2022, and again upon reconsideration on January 31, 2023.  AR 10.

On April 10, 2024, the ALJ held a telephonic hearing, at which M.R. appeared along with his counsel.  *Id.*  M.R. testified that his prior jobs involved installing light fixtures and windows, and abatement work, and that for these jobs he regularly lifted 50-100 pounds.  AR 57-60.  M.R. testified that he could not stand for more than 5-10 minutes, he could only walk a couple of feet, he had problems sitting for extended periods, and that most of the time he needed to lie down.  AR 61-62.  He testified that after cancelling his appointment with a spinal specialist in 2022, he did not follow up.  AR 62.  He testified that he did not do his own grocery shopping but could do simple cooking and some laundry.  AR 62-64.

M.R. testified that in the past, he attempted suicide.  AR 65.  At the time of the attempt, he was hearing voices.  *Id.*  He testified that he still hears voices.  *Id.*  He also testified that he experiences anxiety, depression, paranoia, and "haunting" by his deceased family members.  AR 65-67.  He testified that he was "pretty isolated" and spends around 60% of the day in his room.  AR 64, 67.

An impartial vocational expert also attended the hearing.  The vocational specialist classified M.R.'s prior work as Construction Worker I.  AR 73.  The vocational expert testified that more than one day of absenteeism per month precludes maintaining employment.  AR 77-78.  The expert also testified that taking three unscheduled breaks of 20 minutes per day would preclude work.  AR 78-79.  The expert testified that the tolerance for off-task behavior is up to 10% of the time.  AR 84.

On June 13, 2024, the ALJ issued a written decision, finding that M.R. was not disabled under the Social Security Act.  AR 11.

The ALJ employed the five-step sequential process to determine whether a claimant qualifies for disability benefits.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  In steps one through four, the claimant bears the burden of proving their disability.  At step five, the burden shifts to the Commissioner to show that there are a "significant number of jobs in the national economy that [the] claimant can do."  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

2

First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).  The ALJ determined that M.R. has not engaged in substantial gainful activity since January 23, 2021, the alleged onset date of disability.  AR 13.

Second, the ALJ determines whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that have lasted for at least 12 months.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  The ALJ determined that M.R. had the following severe impairments: mild degenerative disc disease of the lumbar spine, Bursitis and Baker's cyst of knee, schizoaffective disorder, depressive disorder, anxiety disorder, trauma and stressor disorder, and cannabis use disorder.  AR 13.  The ALJ did not find that M.R. had a severe impairment related to his urinary tract infection.  *Id.*

Third, the ALJ determines whether the claimant's impairment or combination of impairments is severe enough to meet or equal the criteria of a listed impairment.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d).  The ALJ found that M.R.'s impairments did not meet the criteria of a listed impairment.  AR 14.

Fourth, the ALJ determines the claimant's residual functional capacity ("RFC").  A person's RFC is their ability to do physical and mental work activities on a sustained basis despite limitations related to their impairments.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).  After determining the RFC, the ALJ must determine whether the claimant can perform the requirements of their past relevant work.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).  The ALJ determined that M.R. had the residual functional capacity to perform light work, with the limitation that he could not climb ladders, ropes, and scaffolds, be required to balance, or work at unprotected heights. AR 15.  Regarding mental limitations, the ALJ found that M.R. could carry out detailed, but not complex instructions and tasks, could have occasional interaction with the general public, and could have occasional changes in the work setting.  *Id.*  The ALJ did not include any limitations regarding M.R.'s ability to stay on task at work or regularly show up to work.  Based on this, the ALJ concluded that M.R. was unable to perform his past relevant work, which was classified as heavy work.  AR 23.

Finally, the ALJ must determine whether the claimant can do any other jobs existing in

significant numbers in the national economy based on their RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). If so, the claimant is not disabled. If not, then the claimant is disabled. Based on the testimony of the vocational expert, the ALJ found that M.R. was capable of performing light work jobs such as mail clerk or merchandise marker, and was therefore not disabled. AR 23-24.

M.R. contends that the ALJ erred in determining the RFC by (1) failing to properly evaluate the medical source opinion of treating provider, Heather Love, NP, (2) failing to provide clear, convincing, and well-supported reasons for discounting Plaintiff's allegations of mental dysfunction, and (3) failing to provide clear, convincing, and well-supported reasons for discounting Plaintiff's allegations of physical dysfunction.

## II.     LEGAL STANDARD

A disability insurance benefits claimant may seek a district court's judicial review after the Commissioner has reached a final decision on the claim. *See* 42 U.S.C. §405(g). A district court may disturb this final decision "only if the ALJ has committed legal error or if the ALJ's findings are not supported by substantial evidence." *Pineda v. Berryhill*, No. 18-cv-02901-EMC, 2019 U.S. Dist. LEXIS 551 (N.D. Cal. Jan. 2, 2019) (citing *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means "more than a scintilla, but less than a preponderance" of evidence that a reasonable mind may accept to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Should the evidence support "more than one rational interpretation," the Court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). The Court may reverse an ALJ's decision if it finds non-harmless error. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). An ALJ's error is harmless if it is inconsequential to the ultimate non-disability finding. *Id.*

United States District Court
Northern District of California

4

## III.    DISCUSSION

### A.    The ALJ Improperly Discounted the Medical Opinion of Treating Provider Heather Love, NP

Plaintiff argues that the ALJ's rejection of NP Love's opinion was not supported by substantial evidence.

For Title II and Title XVI claims filed after March 27, 2017, the ALJ is required to assess the persuasiveness of the medical opinion using the regulations outlined in 20 C.F.R. §§ 404.1520c and 416.920c.  Under these new regulations, the ALJ is asked to consider five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other facts including but not limited to a medical source's familiarity with the other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements. *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  Of these five, the ALJ must address supportability and consistency in each assessment and may, but is not required to, explain how they considered the remaining three factors.  *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (stating that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be"). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792.

These regulations no longer require the ALJ to afford greater weight to the opinions of treating physicians.  *See Woods*, 32 F.4th at 787; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (providing that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources").  Instead, an ALJ is free to consider each medical opinion equally and may find an opinion more persuasive than others provided that substantial evidence supports such a

finding.  When rejecting a medical opinion as unsupported or inconsistent, the ALJ is required to provide an explanation supported by substantial evidence.  *See Woods*, 32 F.4th at 792.  If the ALJ does so, then a court may not overturn the ALJ's decision "unless it is . . . based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).

1.  <u>NP Love's Opinion</u>

On April 8, 2024, Nurse Practitioner Heather Love submitted a Mental Impairment Questionnaire.  AR 1231.  The report stated that she had treated M.R. monthly since December, 2021.  AR 1226.  She stated that while M.R. originally presented with depressive symptoms, "over time it was clear that psychotic symptoms are most salient & disabling." *Id.*  She stated that M.R. takes Lybalvi (antipsychotic), Cymbalta (antidepressant), and Trazalone (antidepressant). *Id.*  She reported clinical findings of paranoia, auditory hallucinations, and lack of insight, especially when undermedicated. *Id.*  She described the prognosis as chronic illness that is "lifelong" and "needs to be managed." *Id.*  She identified a lengthy list of symptoms, including hallucinations, difficulty thinking or concentrating, isolation, paranoid thinking, and memory impairment.  AR 1227.  She opined that M.R. had no useful ability to function in maintaining attention for a two-hour segment and performing at a consistent pace without an unreasonable number and length of rest periods. AR 1228.  She also found that he would not be able to meet competitive standards as to sustaining an ordinary routine without special supervision, working in coordination or proximity to others without being unduly distracted, completing a normal workweek without interruptions from psychologically based symptoms, and dealing with normal work stress. *Id.*  She found he was also unable to meet competitive standards on understanding and remembering detailed instructions, carrying out detailed instructions, and dealing with the stress of semiskilled and skilled work, travelling in unfamiliar places, and using public transportation.  AR 1229.  She provided a narrative opinion that M.R. "exhibits isolative behaviors related to paranoia stemming from delusional thinking & apparent AH [auditory hallucinations]. He also appears to exhibit lack of motivation & affective flattening. Totally dependent on family." *Id.*  She opined that M.R.'s condition would cause him to be absent from work more than four days per month.  AR 1231.

6

United States District Court
Northern District of California

## 2. The ALJ's Evaluation

The ALJ found NP Love's opinion unpersuasive. Although the ALJ found that NP Love's treatment notes supported "lack of insight" and "some limitations in affect and reported psychotic content," the ALJ found the rest of the opinion to not be supported by her treatment notes. AR 20. Specifically, the ALJ rejected NP Love's opinions because (1) NP Love "notes that she has seen the claimant once a month, but this is not consistent with most of the treatment record, which includes several gaps in treatment and even when consistently treating, usually treatment was every 3-6 months"; (2) treatment records did not support "lack of motivation and delusional thinking," and being "totally dependent on family" because "[t]he claimant's delusions were short lived and improved, with him generally denying the same"; (3) M.R.'s "reported inconsistent activities of daily living (ADLs) and behavior (including related to isolating)"; (4) "the quite significant limitations, including no useful ability to function or inability to meet competitive standards are not well supported within the confines of the document or her treatment notes. He had no cognitive findings and little in the way of mood findings even during her own treatment. Outside of her treatment, his mental status examination findings were quite benign outside of some minimal findings during the consultative examination. He had little in the way of mental status examination findings during physical treatment"; (5) "despite quite conservative treatment during most of the period at issue, including several gaps and periods of non-compliance, his mental status examination findings remained consistent and he had inconsistent reports related to ADLs." *Id.*

## 3. The ALJ's Evaluation Is Not Supported by Substantial Evidence

The reasons the ALJ provided to reject NP's Love's opinion are not supported by substantial evidence.

First, the ALJ states that treatment was "usually every 3-6 months" during the periods NP Love was treating. However, this is not correct. M.R. began out-patient treatment with Heather Love, NP at the end of 2021. AR 883. He then saw NP Love on a mostly consistent monthly basis through October, 2022. *See* AR 883 (1/3/2022); AR 890 (1/26/2022); AR 914 (2/14/2022);

AR 927 (3/9/2022); AR 938 (3/16/2022); AR 948 (4/11/2022); AR 1021 (5/18/2022); AR 1032 (7/11/2022); AR 1071 (9/12/2022); AR 1086 (9/28/2022); AR 1100 (10/24/2022). He missed his November appointment, beginning a treatment gap that lasted until April, 2023. AR 1139, 1233. After this, he saw NP Love once again before establishing care with a different provider, Dr. Hassan Brennan. AR 1238, AR 1243. He went back to see NP Love in April, 2024. AR 1267. The record thus supports that NP Love saw Plaintiff on an almost monthly basis for almost a year, and that she remained a treating physician of his for three years. The record does not support the ALJ's finding that NP Love saw M.R. only every 3-6 months "even when consistently treating." AR 20.

Second, the ALJ found NP Love's opinion that M.R. exhibited a lack of motivation and delusional thinking, and that he was completely dependent on his family, unsupported because treatment records show that "[t]he claimant's delusions were short lived and improved, with him generally denying the same." AR 20. But NP Love's opinion is consistent with her treatment notes, which track consistent delusions. M.R. reported hearing voices to NP Love from 2021 through 2024, and her treatment notes describe his psychotic symptoms as "ongoing" through 2024, albeit improved from being "overwhelming and nearly acute" since he started Zyprexa and Lybalvi. AR 1265. To the extent M.R. "denied" experiencing delusions or hallucinations, NP Love's treatment notes reflect that she did not credit M.R.'s denial, which is not surprising considering the nature of his delusions. M.R. told NP Love consistently that his neighbors were talking about him behind his back and that he was being followed if he left the house. *See e.g.*, AR 927, AR 938, AR 1100, AR 1114, AR 1233. While M.R. may not have always understood these as delusions, it is clear from NP Love's treatment notes that she diagnosed them as paranoid hallucination and delusions. AR 1101 (noting that M.R. "denies" auditory hallucinations "but admits hearing his neighbors talking when other people don't" and assessing him with psychosis). NP Love's treatment notes and diagnosis reflect consistent findings of delusion, which improved only due to medications that M.R. did not always take. *Id.* When M.R. stopped taking his medication, the delusions and hallucinations returned in full force. *See* AR 1267 (M.R. reporting to NP Love in 2024 that the "voices and symptoms got really bad" when he stopped his

United States District Court
Northern District of California

medication for a couple of months).  These treatment notes are consistent with NP Love's opinion that M.R.'s mental disorders were "lifelong" and "need[ed] to be managed."  AR 1226.

It is also unclear what about NP Love's treatment notes the ALJ found inconsistent with NP Love's opinion that M.R. is completely dependent on his family.  The treatment notes reflect that M.R. has lived with his family since returning from his hospitalization for attempted suicide and an inability of M.R. to function without the involvement of his family.  For example, in 2023, M.R. told NP Love that he "doesn't feel comfortable doing things out of the house without family."  AR 1234.  This is consistent with M.R.'s hearing testimony that he relies on his father for grocery shopping, assistance with laundry, and that his father does most of his cooking for him.  *See* AR 62 (father does grocery shopping for him); AR 64 (father helps with "heavier parts" of doing laundry), AR 442 (father cooking).  NP Love's opinion that M.R. experienced delusional thinking and was dependent on his family are thus consistent with her treatment notes.

Third, the ALJ found that M.R. "reported inconsistent activities of daily living (ADLs) and behavior (including related to isolating)" and that "There is little to support the need for absences other than his alleged isolative behavior, of which his reports were inconsistent."  AR 20. However, the ALJ does not identify any such inconsistent activities and NP Love's treatment notes reflect consistent isolative behavior from M.R..  While M.R. reported improvement in his isolating behavior, especially after medication, this was improvement from an inability to go out on his front porch, AR 1071, to being able to go into the backyard to walk the dog and go with his father for a couple of hours to visit family, AR 1100.  In a subsequent appointment, he reported not feeling able to leave the house because he would hear things and feel like someone was following him around.  AR 1114.  Even in 2023, he didn't "feel comfortable doing things out of the house without family," AR 1234, and at his hearing he testified that he still does not go out of the house for fun and spends most of his time in his room,  AR 64, 67.  The ALJ's statement that there is "little to support the need for absences other than his alleged isolative behavior" is also inconsistent with the medical record.  NP Love's treatment notes reflect that M.R.'s unwillingness to go out was closely tied to his paranoid delusions and hallucinations—the core of his psychosis, which NP Love ultimately diagnosed as his primary disorder.  *See* AR 951 (revising diagnosis to a

United States District Court
Northern District of California

9

primary psychotic disorder and noting that the psychotic disorder may be responsible for his depressive and pain symptoms).

Fourth, the ALJ found NP Love's opinion unsupported because M.R.'s mental status findings were "benign" outside of her treatment, and even during her treatment he "had no cognitive findings and little in the way of mood findings even during her own treatment." AR 20. This statement is perplexing. The ALJ accepted that M.R. suffers from the severe impairments of depressive disorder and schizoaffective disorder, which are respectively mood and cognitive disorders. AR 13. NP Love's documentation of her diagnoses is lengthy, and courts have held that an ALJ cannot negate a medical provider's assessment simply based on performance on other mental status exams. *Kristine S. v. Saul*, 2020 WL 3578048, at *10 (C.D. Cal. June 30, 2020) ("While a conflict between treatment notes and a provider's opinion remains a legally sound reason to discount that opinion, in this case it was improper for the ALJ to rely on 'normal' or 'unremarkable' mental status examination findings when the treatment notes as a whole showed persistent symptoms – fluctuating between poorly and fairly controlled – related to plaintiff's severe impairments of schizoaffective disorder-bipolar type[ ] and PTSD."); *William B. v. Saul*, 2020 WL 4318755, at *3 (E.D. Wash. July 27, 2020) ("Simply because Plaintiff did well on portions of the mental status exam does not negate the other abnormal findings, as well as [the doctor's] professional assessments."). Indeed, NP Love's treatment notes reflect that it was not until her second session with M.R. that she became aware of his "possible paranoid delusions," AR 916, and it was not until their fourth session that NP Love revised her initial diagnosis to a "primary psychotic disorder," based on the psychotic symptoms "revealed" "over time." AR 951. NP Love's treatment notes support that M.R. has psychotic symptoms that are not obvious from a single test or examination but become apparent over more sustained interaction. M.R.'s "benign" performance on a handful of mental status exams thus provides no reason to discount NP Love's findings. AR 20; *see also* AR 886 (1/3/22 "alright" mood with euthymic affect); AR 803 (2/4/2022 "alright" mood with euthymic affect); AR 962 (6/4/22 euthymic mood).

Finally, the ALJ found NP Love's opinion unpersuasive because "despite quite conservative treatment during most of the period at issue, including several gaps and periods of

10

non-compliance, his mental status examination findings remained consistent." AR 20. NP Love treated M.R. with both antidepressive and antipsychotic medication. AR 1226 (treatment with Lybalvi [antipsychotic], Cymbalta [antidepressant], Trazalone [antidepressant]); AR 1265 (treatment with Zyprexa [antipsychotic]). Treatment of mental conditions with antidepressants or psychotics is not considered "conservative" in this circuit. *See Baker v. Astrue*, No. ED CV 09-1078 RZ, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010) ("Where mental activity is involved, administering medications that can alter behavior shows anything but conservative treatment"); *see also A.B. v. Saul*, Case No. 8:18-cv-00997-SHK, 2019 WL 6139163, at *8 (C.D. Cal. July 23, 2019) (collecting cases stating that treatment with antipsychotic or antidepressant medication does not qualify as "conservative" treatment); *Rice v. Colvin*, No. 2:15-cv-1763 DB, 2017 WL 85815, at *5 (E.D. Cal. Jan. 10, 2017) ("It is entirely unclear to the court how treatment with such medications could be characterized as conservative"). Moreover, NP Love's treatment notes reflect that when M.R. was off his medication, his symptoms returned and his mental state worsened. *See* AR 1267; *see also Garrison v. Colvin*, 759 F.3d 995, 1023 (9th Cir. 2014) (occasional abatement of symptoms while claimant is "in ongoing treatment and has significantly minimized environmental stressors" does not undermine disability).

In sum, the ALJ's rejection of NP Love's opinion is not supported by substantial evidence. NP Love's opinion was not inconsistent with her treatment notes and the medical record. The factors of supportability and consistency support NP Love's opinion. Further, to the extent the ALJ considered NP Love's relationship with M.R. as a factor, the ALJ incorrectly assessed, as a factual matter, the frequency and depth of that patient-provider relationship.

4. <u>The ALJ's Error in Discounting NP Love's Opinion Was Not Harmless</u>

In her submitted medical opinion, NP Love opined that M.R. would miss four or more days a month due to his condition. AR 1231. She also opined that he had no ability to maintain attention for a two-hour segment or perform at a consistent pace without an unreasonable number and length of rest periods. AR 1228. The vocational expert testified that more than one day of absenteeism per month (AR 77), three unscheduled breaks of 20 minutes per day (AR 78), or more

11

than 10% off-task behavior (AR 84) would preclude gainful employment when paired with M.R.'s other limitations. Therefore, if the ALJ had credited NP Love's opinions, the ALJ would have found that M.R. was disabled. The error here was not harmless.

**B. Whether the ALJ Failed to Properly Credit M.R.'s Testimony**

To determine whether a claimant's testimony is credible, an ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007)). First, she must determine if the claimant has "presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1035-36 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). If the claimant meets this first step, "and there is no evidence of malingering," the ALJ then proceeds to the second step and "may reject the claimant's testimony regarding the severity of [his] symptoms only if [s]he makes specific findings stating clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

1. Mental Symptoms Testimony

The ALJ accepted M.R.'s evidence of his underlying impairments, including psychotic and depressive disorders, that could produce the symptoms he alleged. The ALJ thus was required to provide "clear and convincing" reasons for rejecting M.R.' testimony about his symptoms. The ALJ discounted M.R.'s hearing testimony as to his mental health symptom as "highly inconsistent with his reports to his clinicians," inconsistent with the "lack of cognitive findings," and inconsistent with his daily activities. AR 22.

The ALJ's decision to discount M.R.'s testimony based on purported inconsistencies with the medical record runs downstream from the ALJ's decision to discount NP Love's opinion and

12

her extensive treatment notes. As discussed above, this decision was not supported by substantial evidence. NP Love's treatment notes support that M.R. experienced ongoing hallucinations and exhibited isolative behavior, and one-off mental status exams are not sufficient to discount a provider's diagnosed impairments. The ALJ's rejection of M.R.'s testimony, which was based on the ALJ's improper rejection of NP Love's opinion, is thus not convincing. M.R.'s testimony was, in fact, consistent with the medical records.

The ALJ's rejection of M.R.'s testimony based on inconsistent daily activities also fails the clear and convincing standard. The ALJ cited M.R.'s daily activities of "playing video games, preparing meals, and caring for a dog," as "inconsistent" with his alleged cognitive limitations. AR 22. But the ALJ did not attempt to explain how these activities are inconsistent with M.R.'s core mental limitations of paranoid delusions and isolation. All of these daily activities take place inside the home, *consistent* with M.R.'s testimony about his isolation. Further, the ALJ's report somewhat overstates the daily activities that M.R. and his father report. M.R. reports that he "rarely" makes his own meals because his dad cooks for him most of the time, and when he does, he prepares simple foods such as sandwiches, eggs, toast, and frozen dinners. AR 442. M.R.'s father reports that his son "fills bowls of food and water" for the dog, AR 429, and on one occasion M.R. told NP Love he walked the dog around the backyard, AR 1147, but the record nowhere suggests that M.R. took care of his dog in the usual sense of the word: daily walks outside the home, responsibility for its maintenance. These daily activities by M.R. are not a clear and convincing reason to reject his testimony about his mental health symptoms. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (a person need not "vegetate in a dark room" to be eligible for benefits.").

### 2. Physical Symptom Testimony

The ALJ limited M.R. to light work in his RFC based on his physical impairments but declined to credit M.R.'s attestation of "very extreme" physical limitations, including being unable to stand, walk, or sit for more than 5-10 minutes, as "highly inconsistent with the imaging and physical findings." AR 21. The ALJ supported this finding with clear and convincing reasons.

First, the ALJ noted that the medical record reflects minimal physical findings and treatment. AR 22. Although M.R. sometimes used a cane, he testified that no one recommended he use it and that he decided to use it on his own. AR 21-22. The record reflected only "very rare" limping and no other gait findings. *Id.* Despite alleging serious back and spine issues, M.R. testified that he cancelled his initial scheduled appointment with a spinal specialist in 2022 and did not follow up. AR 22 (citing AR 62).

The medical record supports the ALJ's reasoning. In January, 2021, M.R. sought treatment for sciatic pain and was diagnosed with cyst of knee and bursitis. AR 16-17. By May, 2021 M.R. sought a return-to-work letter, reporting significant improvement. AR 17. He declined back injections and additional physical therapy. *Id.* In July, he reported numbness and tingling but was not diagnosed with a physical condition and did not attend any follow-up consultative physical examinations. AR 17. After M.R.'s suicide attempt and mental health diagnoses, the record is thin on objective evidence of physical symptoms. Indeed, NP Love noted that his mental symptoms were "possibly" the cause of the pain. AR 1024. When Plaintiff began to take anti-psychotic medication, he reported improvement in both his mental health symptoms and his pain. AR 1100.

M.R. argues that the ALJ may not reject a claimant's symptom allegations based solely on a lack of medical evidence. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) ("[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."). But the ALJ also relied on M.R.'s testimony that he repeatedly declined physical therapy and physical consultations, including cancelling his appointment with a spine specialist and never following up. AR 17, 22. An ALJ may properly consider "an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" of an alleged disabling physical condition to "cast doubt on the sincerity of the claimant's pain testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, the ALJ found M.R. failure to seek treatment and declination of offered treatment was inconsistent with the very severe physical symptoms he alleged. *Burch*, 400 F.3d at 680 (ALJ may consider inconsistences in testimony).

14

Claimant relies on a line of cases suggesting that a claimant's failure to seek mental health counseling is not a proper ground for an adverse credibility determination as to mental health issues. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). However, *Nguyen* reflected concerns specific to mental health conditions: that such conditions are "underreported" and that "those afflicted often do not recognize that their condition reflects a potentially serious mental illness." *Id.* This reasoning does not apply to the kinds of physical disabilities M.R. alleges – an inability to stand, walk, or sit for more than ten minutes. The ALJ could properly consider M.R.'s failure to seek treatment for such apparent physical conditions. *See Fair*, 885 F.2d at 604. The ALJ could also consider the inconsistency of M.R. seeking mental health treatment but consistently failing to seek similar treatment for his alleged physical impairments after 2021. The ALJ has thus met the clear and convincing standard for rejecting M.R.'s physical symptom testimony.

## C. Payment of Benefits

"[W]hen 'the record before the agency does not support the agency action, ... the agency has not considered all relevant factors, or ... the reviewing court simply cannot evaluate the challenged agency action on the basis before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). The Court may order an immediate award of benefits if: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin,* 759 F.3d 995, 1020 (9th Cir.2014). If all of these conditions are met, immediate payment of benefits is required, unless the Court finds that the "record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021. Further proceedings are "generally useful" where "there is a need to resolve conflicts and ambiguities." *Treichler*, 775 F.3d at 1101. "[A]llowing the ALJ to revisit

15

the medical opinions and testimony that she rejected for legally insufficient reasons" is not a valid purpose for further proceedings. *Garrison v. Colvin*, 759 F.3d at 1021.

Here, the Court has found that the ALJ improperly discredited NP Love's medical opinion regarding M.R.'s mental impairments and their impact on his function, as well as M.R.'s testimony about his hallucinations and isolative behavior. In her submitted medical opinion, NP Love opined that M.R. would miss four or more days a month due to his condition. AR 1231. She also opined that he had no ability to maintain attention for a two-hour segment or perform at a consistent pace without an unreasonable number and length of rest periods. AR 1228. The vocational expert testified that more than one day of absenteeism per month (AR 77), three unscheduled breaks of 20 minutes per day (AR 78), or more than 10% off-task behavior (AR 84) would preclude gainful employment when paired with M.R.'s other limitations. Therefore, if the ALJ had credited NP Love's opinions, the ALJ would have found that M.R. was disabled. The Commissioner has not identified any useful purpose further proceedings would serve, and the Court does not find any. Nor does the Court find that the record as a whole creates a serious doubt that M.R. is disabled. Under these circumstances, remand for immediate payment is required. *See Garrison*, 759 F.3d 995 at 1023.

## IV.    CONCLUSION

Plaintiff's motion is **GRANTED**. The case is remanded for immediate payment of benefits.

**IT IS SO ORDERED**.

Dated: 3/3/2026

_____
EDWARD M. CHEN
United States District Judge

16